[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 174.]

MIDWEST FIREWORKS MANUFACTURING COMPANY, INC., APPELLEE, v.
DEERFIELD TOWNSHIP BOARD OF ZONING APPEALS ET AL.; CARVER,
APPELLANT.

[Cite as *Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*,
2001-Ohio-24.]

*Zoning—Townships—Board of zoning appeals—Neighboring property owner
generally interested in seeing zoning regulations enforced is a "person
aggrieved" who may appeal under R.C. 519.15.*

(No. 00-196—Submitted November 15, 2000—Decided March 28, 2001.)

APPEAL from the Court of Appeals for Portage County, No. 98-P-0131.

_____

LUNDBERG STRATTON, J.

{¶ 1} R.C. 519.15 allows "any person aggrieved" by an administrative officer's zoning decision to appeal to the township board of zoning appeals. This case asks whether the property owner herein has standing as a "person aggrieved" by a zoning decision allowing the construction of a building on neighboring property. For the reasons set forth below, we hold that appellant, Jesse J. Carver, Jr., is a "person aggrieved" and, therefore, has standing to appeal the decision to the township board of zoning appeals.

I

{¶ 2} Appellee, Midwest Fireworks Manufacturing Company, Inc. ("Midwest"), operates a fireworks factory on approximately eighty-six acres of land in Deerfield Township, Portage County. Midwest and its predecessors have occupied this property since the early 1970s, before any township zoning regulations were in place. Prior to 1980, the Deerfield Township Board of Trustees enacted the Deerfield Zoning Regulations ("DZR"), which zoned Midwest's land

as a residential district. Midwest continued its fireworks operation as a valid, nonconforming use. See R.C. 519.19.

{¶ 3} In 1982, an explosion and fire destroyed two buildings and several trailers on Midwest's property. The fire injured four persons and caused an estimated $1 million in damages. Although Midwest continued its fireworks business and constructed buildings on other parts of its land, it did not reconstruct the buildings destroyed in 1982.

{¶ 4} Fifteen years later, in 1997, Midwest and Pacific Financial Services, Inc., the record owner of the property on which Midwest is situated, applied for a zoning certificate that would allow Midwest to construct a single building to replace the two buildings that had burned down in the 1982 fire. The application stated that the proposed building would be seven thousand two hundred square feet. Attached to the application was an affidavit from Larry Lomaz, who controlled Midwest and Pacific Financial Services. According to Lomaz, the proposed building was approximately the same size as the two buildings destroyed in 1982. Lomaz also claimed that Midwest had not rebuilt the destroyed buildings before 1997 due to several years of litigation involving it and Deerfield Township. A Deerfield Township zoning inspector granted the zoning certificate nine days after Lomaz submitted the application.

{¶ 5} Appellant, Jesse J. Carver, Jr., owns and lives on property directly across a two-lane highway from Midwest's property. He was living there when the fire occurred at Midwest in 1982. Carver appealed the issuance of the zoning certificate to the Deerfield Township Board of Zoning Appeals ("BZA"). He argued to the BZA that Midwest had abandoned its nonconforming use privileges by failing to rebuild the destroyed buildings within two years. He testified that he had regularly viewed Midwest's property and had not observed, since the 1982 fire, any activity related to Midwest's fireworks business on the site of the proposed building. Carver also presented evidence to the BZA that the two buildings

destroyed in 1982 were of a combined 1,536 square feet—considerably smaller than the seven-thousand-two-hundred square-foot structure that Midwest proposed to build.

{¶ 6} The BZA conducted hearings on February 11 and 21, 1998. Carver appeared with counsel at both hearings and testified at the second one. Lomaz attended on behalf of Midwest the February 11 hearing only. The BZA confined its inquiry to two issues: whether this was a nonconforming use, and the size of the proposed building. Following the two hearings, the BZA ruled in Carver's favor and revoked Midwest's zoning certificate.

{¶ 7} Midwest filed an R.C. 2506.01 administrative appeal with the Portage County Court of Common Pleas. The company argued, among other things, that Carver lacked standing to appeal to the BZA because he was not a "person aggrieved" by the zoning inspector's issuance of a zoning certificate. The trial court disagreed:

{¶ 8} "Carver's property and residence is located directly across the road from [Midwest's] property. Only a two lane roadway separates the two properties. From his property Carver can see the site where the proposed new building was to be built. The former buildings had exploded and burned in 1982, creating a legitimate concern for the safety of his own property. It was Carver's position that issuance of the zoning permit was unlawful. From all the circumstances presented in the transcript to proceedings, it can be concluded that Carver was a 'person aggrieved' of [Midwest's] receipt of a zoning permit and had standing to appeal to the Board from the zoning inspector's decision to issue that zoning permit."

{¶ 9} The trial court also rejected Midwest's remaining arguments and affirmed the BZA's decision to revoke the zoning certificate. The Eleventh District Court of Appeals reversed and entered judgment in favor of Midwest. The court of appeals concluded that Carver made "no showing that allowing Midwest to build one more building on property that already contained multiple buildings would

affect Mr. Carver's personal, pecuniary or property rights." Absent such a showing, Carver was not a "person aggrieved" by the zoning inspector's issuance of the zoning certificate. The court concluded that Carver lacked standing to appeal to the BZA and, consequently, the BZA lacked authority to revoke the zoning certificate issued to Midwest.

{¶ 10} This cause is now before this court upon the allowance of a discretionary appeal.

II

{¶ 11} The sole issue before us is whether Carver had standing to challenge the issuance of Midwest's zoning certificate by bringing an appeal to the BZA. The right to appeal an administrative decision is neither inherent nor inalienable; to the contrary, it must be conferred by statute. See *Roper v. Richfield Twp. Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, 173, 18 O.O.2d 437, 440, 180 N.E.2d 591, 594. Carver claims a statutory right to appeal under R.C. 519.15 and DZR 701.52, both of which allow "any person aggrieved * * * by any decision of the administrative officer" to appeal that decision to the BZA. Therefore, whether Carver had standing to bring an appeal before the BZA depends upon whether he was a "person aggrieved" by the zoning inspector's issuance of a zoning certificate to Midwest.

{¶ 12} In *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 23 O.O. 369, 42 N.E.2d 758, this court held: "Appeal lies only on behalf of a party aggrieved by the final order appealed from." *Id*. at syllabus. An "aggrieved" party is one whose interest in the subject matter of the litigation is " 'immediate and pecuniary, and not a remote consequence of the judgment.' " *Id*. at 161, 23 O.O. at 369, 42 N.E.2d at 759, quoting 2 American Jurisprudence (1936) 942, Appeal and Error, Section 50. Thus, in order to have standing to appeal, a person must be "able to demonstrate a present interest in the subject matter of the litigation which has been prejudiced" by the judgment appealed from. *Willoughby Hills v. C.C. Bar's Sahara, Inc*. (1992), 64 Ohio St.3d 24, 26, 591 N.E.2d 1203,

1205. See, also, Black's Law Dictionary (7 Ed.1999) 1144 (defining "aggrieved party" as one whose "personal, pecuniary, or property rights have been adversely affected by another person's actions or by a court's decree or judgment"). A future, contingent, or speculative interest is not sufficient to confer standing to appeal. *Ohio Contract Carriers*, 140 Ohio St. at 161, 23 O.O. at 369, 42 N.E.2d at 759.

{¶ 13} The question of Carver's standing to appeal the issuance of the zoning certificate did not become an issue until Midwest's appeal to the common pleas court. To initiate the appeals process, Carver had completed a preprinted form entitled "Deerfield Township Application for Appeal." The form instructs the appealing party to describe the "error" allegedly made by the zoning inspector. It does not require the person to explain or give reasons why the person is entitled to appeal the decision. At the hearings, the BZA expressly limited its inquiry by proceeding under the assumption that Carver had standing. Therefore, the record before the BZA on the issue is sparse at best.

{¶ 14} In its appeal to the common pleas court, Midwest argued that Carver was not a "person aggrieved" and, therefore, the BZA lacked jurisdiction to consider the administrative appeal. We agree with the trial court that the facts adduced before the BZA support a conclusion to the contrary. The record establishes that Carver sufficiently satisfied the term "person aggrieved" within the meaning of R.C. 519.15.

{¶ 15} Carver is a taxpayer and property owner who lives immediately adjacent to the fireworks factory, separated only by a two-lane road. In 1982, two buildings on the fireworks property exploded and burned, causing injuries to four persons. The company plans to replace the two destroyed buildings with one structure that would be nearly five times the combined size of the two former buildings. The fact that Midwest's property already contains multiple buildings does not diminish the impact of yet another building with a proposed size of seven thousand two hundred square feet. To an adjacent property owner, construction of

an additional, larger building may be an immediate concern under certain circumstances. Carver's position is unique as compared to others within the general community who do not live across the street from the fireworks factory.

{¶ 16} Carver's position is further buttressed by this court's opinion in *Roper v. Bd. of Zoning Appeals*, 173 Ohio St. 168, 18 O.O.2d 437, 180 N.E.2d 591. In *Roper*, this court decided whether a particular property owner had standing to appeal a board of zoning appeals' issuance of a variance to another property owner in the township. Although the opinion does not state whether Roper's property was neighboring or adjacent to the rezoned property, Roper commenced an administrative appeal to the common pleas court that was ultimately dismissed for lack of standing. This court reversed the dismissal and held that Roper had standing to bring an administrative appeal because he (1) was a resident, elector, and property owner of the township, (2) appeared before a township board of zoning appeals with an attorney to protest a zoning change, and (3) stated his intention on the record to appeal the board's decision to the common pleas court. *Id*. at syllabus. See, also, *Schomaeker v. First Natl. Bank of Ottawa* (1981), 66 Ohio St.2d 304, 20 O.O.3d 285, 421 N.E.2d 530. Schomaeker was an adjacent property owner who was "directly affected" by the grant of a zoning variance to property contiguous to her and who had previously challenged the proposed use. Therefore, she was within the "class of persons * * * entitled to appeal." *Id*. at paragraph two of the syllabus.

{¶ 17} Here, there were no public hearings where Carver could voice his concerns before the zoning inspector unilaterally issued the permit to Midwest. Yet, within twenty days of issuance of the zoning certificate, Carver made his opposition known when he appealed to the BZA. He personally attended the public hearing held by the BZA and was represented by counsel. Carver's lack of participation prior to the initial zoning decision (where he had no opportunity to object) does not diminish his concerns for safety due to his proximity to the construction of yet another larger building on Midwest's property.

6

{¶ 18} Midwest argues that fear of a future explosion is a speculative or remote consequence. Had there never been an explosion or fire on the property, this argument may be more persuasive. Indeed, we find that the opposite is true. With the manufacture of fireworks, requiring the use and handling of explosive materials, the risk of catastrophic explosion exists at all times. In addition, fireworks explosions have the potential to propel ignited materials directly onto Carver's property, thereby spreading the risk of fire. This creates a real and serious threat to persons or property. The fact that an explosion has occurred in the past only augments a neighboring property owner's concern about the operation.

{¶ 19} Consequently, we hold that, under the facts of this case, Carver is a "person aggrieved" within the meaning of R.C. 519.15 and, therefore, he has standing to appeal the decision of Deerfield Township granting a zoning certificate to Midwest Fireworks. The judgment of the court of appeals is reversed, and the cause is remanded to the court of appeals to consider the case on its merits.

*Judgment reversed*
*and cause remanded.*

MOYER, C.J., DOUGLAS and RESNICK, JJ., concur.

F.E. SWEENEY, PFEIFER and COOK, JJ., dissent.

_____

**COOK, J., dissenting.**

{¶ 20} This case asks whether a property owner is a "person aggrieved" by a zoning decision absent a showing by the property owner of a present and substantial interest in the decision beyond a desire to see zoning regulations properly enforced. Because an immediate personal or pecuniary injury is an indispensable element of standing, I respectfully dissent.

{¶ 21} Carver claims a statutory right to appeal under R.C. 519.15 and Deerfield Zoning Regulation 701.52, both of which allow "any person aggrieved * * * by any decision of the administrative officer" to appeal that decision to the

Board of Zoning Appeals ("BZA"). To be "aggrieved" for purposes of appellate standing, a person must have a *present* and *substantial* interest in the challenged action (in this case, the issuance of the zoning certificate). For a private litigant in a zoning appeal, a present and substantial interest consists of harm that is unique to that party. *Willoughby Hills v. C.C. Bar's Sahara, Inc.* (1992), 64 Ohio St.3d 24, 27, 591 N.E.2d 1203, 1205-1206. A future, contingent, or speculative interest will not suffice. *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.* (1942), 140 Ohio St. 160, 161, 23 O.O. 369, 42 N.E.2d 758, 759.

{¶ 22} The majority concludes that Carver is uniquely harmed by the issuance of the building permit in view of the fact that Midwest's fireworks facilities exploded in 1982 and could explode again, posing a serious threat to Carver's personal and proprietary interests. But Carver alleged no personal or pecuniary injury when he filed his BZA appeal. He simply alleged that Midwest's proposed structure was larger than the buildings it was supposed to replace and that the zoning inspector did not make a "reasonable effort to determine" whether the building was a proper nonconforming use. Similarly, in his brief to this court, Carver describes his harm as the "blatantly wrongful issuance" of a zoning certificate that allows Midwest to "expand" its commercial fireworks operation in a residential zone. Carver maintains that he has a right "to expect and to demand" enforcement of the township zoning regulations, which exist for his family's health, safety, and welfare.

{¶ 23} The common thread in Carver's allegations of harm is that they have less to do with his personal or proprietary interests than they do with ensuring Midwest's compliance with duly enacted zoning regulations. But enforcement of zoning laws is a concern shared by other citizens of the township at large. Carver's asserted interest is therefore akin to a generalized grievance shared equally by other members of the public. And such harm normally will not confer standing to appeal. *Am. Aggregates Corp. v. Columbus* (1990), 66 Ohio App.3d 318, 323, 584 N.E.2d

26, 29, citing *Warth v. Seldin* (1975), 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 354.

{¶ 24} I also disagree with the majority's view that Carver's asserted harm is "unique" to him in light of his status as an owner of property across the road from Midwest's. Neither Carver nor the majority has explained how Carver's personal, pecuniary, or property rights would be adversely affected by Midwest's construction of one more building on a parcel that already contains multiple buildings devoted to Midwest's commercial fireworks business. Nevertheless, the majority concludes that there is a "real and serious threat" to Carver's property because the manufacture of fireworks carries "the risk of catastrophic explosion * * * at all times." But these fears of future explosion are speculative at best and based on little more than the assumption, without support in the record, that Midwest is generally vulnerable to explosions and fires regardless of how safely it engages in its business. Even if Carver has a general fear for life and limb because of Midwest's activities, he cannot use an intangible possibility of *future* injury as a springboard to R.C. 519.15 review. Standing exists only if the appealing party can show a present interest in the matter appealed, not simply a concern of future injury that may or may not occur. Cf. *In re Petition for Incorp. of Holiday City* (1994), 70 Ohio St.3d 365, 371, 639 N.E.2d 42, 47 (arguments concerning what injuries *may* occur in event of incorporation were "speculative at best and fail to expose a present interest in the matters at issue").

{¶ 25} Moreover, the majority inexplicably overlooks a fact that undermines its finding of immediate harm based on a perceived fear of future explosion. Midwest's application for a zoning certificate expressly stated that the proposed building would be used as *garage storage for company vehicles* and not for fireworks manufacturing or storage. Although the majority emphasizes the "risk of catastrophic explosion" related to fireworks manufacturing, the zoning

application on its face suggests a significantly diminished threat of this type of harm.

**{¶ 26}** To buttress its conclusion, the majority cites *Roper v. Richfield Twp. Bd. of Zoning Appeals* (1962), 173 Ohio St. 168, 18 O.O.2d 437, 180 N.E.2d 591, and *Schomaeker v. First Natl. Bank of Ottawa* (1981), 66 Ohio St.2d 304, 20 O.O.3d 285, 421 N.E.2d 530, to support a finding that Carver has standing to bring an R.C. 519.15 appeal. Carver relies on both of these cases to support the proposition that he would have standing, as a neighboring property owner, if this were an R.C. 2506.01 appeal and that he should therefore have standing under R.C. 519.15. But these cases provide weak support for this conclusion. Neither *Roper* nor *Schomaeker* suggests that mere adjacency of one's property is enough to confer standing to bring an administrative zoning appeal. When read together, these cases clarify that harm unique to the complaining party provides the basis upon which a private property owner, as distinguished from the public at large, can challenge a zoning decision in an administrative appeal. See *Willoughby Hills*, 64 Ohio St.3d at 27, 591 N.E.2d at 1205-1206. An adjacent or neighboring property owner *may* have standing to bring an appeal under R.C. 519.15 *if* that owner demonstrates the immediate personal or pecuniary injury required to be a "person aggrieved" within the meaning of the statute. Carver has not demonstrated unique harm in this case and thus cannot rely on *Roper* and *Schomaeker* to support his argument for standing.

**{¶ 27}** Absent sufficient allegations of a present and substantial interest in the litigation that is unique compared to that shared by the public at large, Carver has not established that he has standing to appeal to the BZA under R.C. 519.15. I would therefore affirm the judgment of the court of appeals.

F.E. SWEENEY and PFEIFER, JJ., concur in the foregoing dissenting opinion.

_____

*Cole Co., L.P.A.,* and *Mark H. Ludwig,* for appellee.

*Craig T. Conley*, for appellant.

————————————