[Cite as *Philbin v. Cleveland*, 2017-Ohio-9162.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105356**

---

## ANDREW P. PHILBIN, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## CITY OF CLEVELAND, OHIO, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-851571

**BEFORE:**   E.T. Gallagher, J., Keough, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   December 21, 2017

**ATTORNEYS FOR APPELLANTS**

**For Andrew P. Philbin**

Doron M. Kalir
Cleveland-Marshall Civil Litigation
Cleveland-Marshall College of Law
2121 Euclid Avenue, LB 138
Cleveland, Ohio 44115

**For Luis S. Sandoval**

Kenneth J. Kowalski
Cleveland-Marshall Civil Litigation
Cleveland-Marshall College of Law
2121 Euclid Avenue, LB 138
Cleveland, Ohio 44115

**Also Listed**

Andrew P. Philbin, pro se
Luis S. Sandoval, pro se
1518 West 32nd Street
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

**For the City of Cleveland**

Barbara A. Langhenry
Law Director
City of Cleveland

BY:    Carolyn M. Downey
Assistant City Prosecutor
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

**For Triban Investment, L.L.C. and Knez Construction, Inc.**

Gillian Hall
7555 Fredle Drive, Suite 210
Concord, Ohio 44077

EILEEN T. GALLAGHER, J.:

**{¶1}** Appellants, Andrew P. Philbin and Luis S. Sandoval ("appellants"), appeal the dismissal of their administrative appeal. Their sole assignment of error states:

> The trial court erred by dismissing this administrative appeal for lack of standing.

**{¶2}** We find no merit to the appeal and affirm.

## I. Facts and Procedural History

**{¶3}** Appellants own a home in the historic Ohio City neighborhood of Cleveland, Ohio. In 2015, Triban Investment, L.L.C. ("Triban") applied for zoning variances to construct a six-unit, four-story condominium building on property located at 3703-3707 Clinton Avenue, in Cleveland. The property is located in a B1 zoning district, which limits housing to one or two-family residences under the Cleveland Codified Ordinances ("C.C.O."). Appellants' home is located one block away from the subject property. (Tr. 26.)

**{¶4}** In August 2015, the Cleveland Board of Zoning Appeals ("the board") held a public hearing on Triban's application. Notice of the public hearing was published as required by law. Sandoval attended the hearing and identified what he viewed as several problems with the proposed construction. In his opinion, the six-unit condominium structure would increase parking difficulties, overburden the sewer system, and adversely affect government services such as garbage collection and snow removal. He also testified that he believed the proposed condominiums would diminish the value of neighboring properties. He stated:

I believe that the granting of the [v]ariances will negatively impact the property values of nearby homes in the long term, including my home because they are in direct contradiction to the 20/20 Plan and existing [o]rdinances that protect the quality of life of the residents of this area of Cleveland. They prevent unnecessary density from overdevelopment and promote a responsible project that contributes to the integrity and quality of life in the neighborhood.

(Tr. 53.) Philbin, who was unable to attend the meeting due to his employment, sent a letter to the board, which states in relevant part: "I fear that my home value will be diminished by the construction of condominiums in my historic neighborhood." Neither Sandoval, Philbin, nor any other resident, offered expert testimony regarding the impact the proposed condominiums would have on nearby property values.

{¶5} William Sanderson, an officer of Triban, testified that before Triban applied for the variances, it worked with the city's Landmarks Commission to ensure "that the building is of high quality and high value for the neighborhood" and that it reinforces "the residential characteristics of the neighborhood." (Tr.16.) Sanderson also stated that Triban met with neighbors and that the majority of the neighborhood "block club," known as the Clifton/Franklin Block Club, voted in favor of the project. (Tr. 17.)

{¶6} Kerry McCormack, then director of community affairs of Ohio City, Inc. and a resident who lives directly across the street from the proposed condominiums, stated that the Clifton/Franklin Block Club approved Triban's project by a vote of 16 to six. (Tr. 33, 39.) However, a couple of residents who attended the hearing and also live very close to the proposed condominiums expressed concern that some members of Clifton/Franklin Block Club who voted in favor of the project live further away and would not be directly impacted by it. (Tr. 42.)

{¶7} Ben Trimble, also from Ohio City, Inc., stated that the Ohio City Design Review Committee supported Triban's plans for the six-unit condominiums because the plans have a historic design, and the condominiums would meet the demand for people who want to live in Ohio City but do not want single family homes. Trimble explained that the project suits the "character of the neighborhood" in part because the subject property was once home to a multifamily structure that burned in a fire in the 1970s. (Tr. 37.)

{¶8} Trevor Hunt, a neighborhood planner, explained that the supplemental plans submitted to the city's long-term "20/20 Plan" call for more dense populations near Detroit Road and Lorain Avenue in order to "activate those streets" with retail. In his opinion, the six-unit condominiums "would support walkability to those establishments up and down both Detroit and Lorain Avenue." (Tr. 39.)

{¶9} At the conclusion of the hearing, the five-member board voted unanimously to grant the variances. Sandoval and Philbin filed a timely notice of appeal to the Cuyahoga County Court of Common Pleas. Cleveland filed a motion to dismiss their appeal, arguing that Sandoval and Philbin lacked standing to challenge the board's decision because they are not adjacent property owners, and they have not demonstrated that they will be directly affected by the variances.

{¶10} While the motion was pending, Knez Construction Inc. ("Knez") filed a motion to substitute itself as a party to the proceedings, alleging that it was the transferee of Triban's interest in the property. The trial court simultaneously granted the motion to

substitute Knez and the city's motion to dismiss the appeal. In its journal entry dismissing the appeal, the trial court stated, in relevant part:

> Appellees the city of Cleveland and B.R. Knez Construction, Inc.'s motion to dismiss the appeal are granted. Appellants lack standing to appeal the Cleveland Board of Zoning Appeals' (BZA) decision in this case because they have not demonstrated that they have suffered a unique harm as a result of the BZA's decision. * * * A property owner is directly affected by the decision "when the party can demonstrate a unique harm." * * * This injury "must be more than speculation and supported by credible evidence." * * * While plaintiffs speculate that the proposed development will adversely affect their property values, they have failed to present to this court any credible evidence to support their assertion.

(Judgment entry dated December 29, 2016, quoting *Kurtock v. Cleveland Bd. of Zoning Appeals*, 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836.) Appellants now appeal the trial court's judgment.

## II. Law and Analysis

{¶11} In their sole assignment of error, appellants argue the trial court erred in dismissing their administrative appeal for lack of standing.

{¶12} Whether a party has standing to invoke the trial court's jurisdiction is a question of law, which we review de novo. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.

{¶13} The right to appeal is neither inherent nor inalienable and must be derived from some constitutional or statutory authority. *Willoughby Hills v. C. C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26, 591 N.E.2d 1203 (1992). R.C. 2506.01 establishes the right

to appeal an administrative decision of a political subdivision that determines "rights, duties, privileges, benefits or legal relationships of a person * * *." R.C. 2506.01(C). However, R.C. 2506.01 does not specifically identify who has standing to appeal administrative decisions.

{¶14} In *Roper v. Bd. of Zoning Appeals, Twp. of Richfield*, 173 Ohio St. 168, 180 N.E.2d 591 (1962), the Ohio Supreme Court concluded it would be inappropriate to limit standing to bring an administrative appeal to parties whose applications for zoning modification had been denied. The court reasoned that such a "'heads I win, tails you lose'" approach would be contrary to the intent of the administrative appeals statute and "repugnant" to the sensibilities of the court's majority. *Id*. at 173. Accordingly, the *Roper* court held:

> A resident, elector and property owner of a township, who appears before the township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of a zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to a court, has the right of appeal to the Common Pleas Court if the appeal is properly and timely made pursuant to Sections 519.15 and 2506.01 to 2506.04, inclusive, and Chapter 2505, Revised Code.

*Id*. at syllabus. Although we know that Roper was a resident and landowner in the township, the opinion is silent as to the proximity of his land to the property of the proposed variance. Nevertheless, the court recognized that Roper "came as a person whose interests were adversely affected, and he appeared with his lawyer in person in opposition to a zoning change which would damage Roper and his property." *Id*. at 173.

**{¶15}** In *Schomaeker v. First Natl. Bank*, 66 Ohio St.2d 304, 311-312, 421 N.E.2d 530 (1981), the court held that an individual whose property was contiguous to the zoning applicant's property had standing to challenge a variance because her property was "directly affected" by it. *Id*. at 312. The "directly affected" language clarified "the basis upon which a private property owner, as distinguished from the public at large, could challenge the board of zoning appeals' approval of the variance." *Willoughby Hills*, 64 Ohio St.3d at 27, 591 N.E.2d 1203. In *Willoughby Hills*, the court further explained this distinction:

> The private litigant has standing to complain of harm which is unique to himself. In contrast, a private property owner across town, who seeks reversal of the granting of a variance because of its effect on the character of the city as a whole, would lack standing because his injury does not differ from that suffered by the community at large. The latter litigant would, therefore, be unable to demonstrate the necessary unique prejudice which resulted from the board's approval of the requested variance.

*Id*. Thus, a person owning property contiguous to the proposed use who actively participates at the hearing on the variance "is within that class of persons directly affected by the administrative decision and is entitled to appeal under R.C. Chapter 2506." *Schomaeker* at paragraph two of the syllabus; *see also Willoughby Hills* at 27.

**{¶16}** The term "contiguous" means "[s]haring an edge or boundary; touching" or "adjacent." *The American Heritage Dictionary* 407 (3d Ed.1996). *Schomaeker* and *Willoughby Hills* establish that while contiguous landowners are within the class of persons "directly affected" by zoning decisions, landowners "across town" are not. Appellants' property is neither contiguous to the proposed condominiums nor "across town." Their property falls in the nebulous middle ground between the two.

**{¶17}** This court has held that a noncontiguous property owner has standing to appeal an administrative zoning decision if the property owner "actively participated at the administrative hearing and has been directly affected by the decision." *Kurtock*, 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, ¶ 11. In determining whether a property owner has been "directly affected" by the zoning variance, this court explained:

> One is directly affected, as distinguished from the public at large, when the party can demonstrate a unique harm. * * * For instance, concerns regarding increased traffic alone have generally been regarded as affecting the public at large, while evidence showing a diminution in property value because of an administrative decision has been found to constitute a direct effect sufficient to confer standing.

*Id.*, citing *Safest Neighborhood Assn. v. City of Athens Bd. Of Zoning Appeals*, 4th Dist. Athens Nos. 12CA32, 12CA33, 12CA34, and 12CA35, 2013-Ohio-5610, ¶ 11.

**{¶18}** Appellants argue they have standing because they participated at the administrative hearing and the variances will negatively impact their property values. The city argues that Philbin did not attend the hearing in person and therefore does not have standing. However, Philbin participated at the hearing through Sandoval as his representative, who read Philbin's letter to the board. A written copy of Philbin's letter was also submitted to the board. We recognize that zoning boards cannot accommodate everyone's schedules, and to preclude someone from participation simply because his physical presence was not possible is neither practical nor just. Moreover, the city has not provided any legal authority for its position that an individual must be physically present in order to "actively participate" at administrative hearings. Therefore, Philbin's

letter, which was submitted in writing and spoken through a personal representative, constituted active participation at the hearing.

{¶19} The city also contends, citing *Roper*, 173 Ohio St. 168, 180 N.E.2d 591, that appellants failed to actively participate at the hearing because they were not represented by lawyers. Although the appellant in *Roper* was represented by counsel at the zoning hearing, representation by counsel is not a requirement of active participation at such a hearing. Individuals often represent their own interests pro se. To hold that legal representation at a zoning hearing is required for standing to file an administrative appeal would deny many aggrieved citizens access to the courts. Therefore, appellants have established that they actively participated at the hearing before the Cleveland Board of Zoning Appeals.

{¶20} The more difficult question is whether appellants are directly affected by the variances in this case. Appellants contend, quoting the "as the crow flies" language from the dissenting opinion in *Kurtock*, that they are directly harmed by the proposed condominiums due to the close proximity of the condominiums to their home.[1] *See Kurtock*, 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836 (Stewart, J., dissenting). However, as previously stated, "[o]ne is directly affected, as distinguished from the public at large, when the party can demonstrate a unique harm." *Id.* at ¶ 11.

---

[1] We note that *Kurtock* is procedurally distinguishable from the facts of this case. In *Kurtock*, this court reversed the trial court's judgment because it failed to address the issue of standing. In this case, the trial court made a determination that appellants did not have standing.

**{¶21}** Appellants stated at the hearing that they believed the value of their property will be negatively impacted by the construction of the six-unit condominium building. Sandoval testified that while there were no single family homes for sale in the neighborhood at the time of the hearing, there were four condominiums for sale "according to the total 4 Realtor lockboxes on the outside of the building * * * on Franklin and 32nd." Appellants also provided information regarding recent sale prices of single-family homes built by Knez. This information was offered to show that the proposed condominiums are unnecessary because Knez could make a profit by building single-family homes on the property. However, appellants failed to explain how any of this evidence related to the impact the six-unit condominium building would have on the value of their single-family home.

**{¶22}** Moreover, appellants did not provide any expert evidence to support their contention that property values will decline if the condominiums are built. To establish that a noncontiguous property owner is adversely affected by an administrative decision, the property owner may not rest on speculation, but must support his claims with competent evidence. *Kurtock* , 8th Dist. Cuyahoga No. 100266, 2014-Ohio-1836, at ¶ 13; *see also Zelnick v. Troy City Council*, 85 Ohio Misc.2d 67, 684 N.E.2d 381 (C.P.1997) ("[T]estimony by expert witnesses that the value of the appellant's noncontiguous property would be reduced by the enactment of a zoning ordinance will support a finding that an appellant was directly affected by the zoning ordinance."); *Westgate Shopping Village v.Toledo*, 93 Ohio App.3d 507, 514, 639 N.E.2d 126 (6th Dist.1994) (Shopping center had standing to challenge zoning ordinance that would

expand size of existing mall where evidence showed that, as a result of the ordinance, "money that would have been spent at Westgate's shopping center will instead be spent at the Mall."); *In re Appeal of Jefferson Twp. Bd. of Trustees*, 78 Ohio App.3d 493, 605 N.E.2d 435 (10th Dist.1992) (Township trustees lacked standing to challenge annexation where they failed to provide evidence of "concrete adverse impact" on its legal rights.).

**{¶23}** Appellants' statements regarding the potential effect the condominiums may have on their property value is too speculative and vague to support a conclusion that they have been uniquely harmed by the variances in this case. Appellants are not real estate appraisal experts, and they did not provide any evidence concerning projected property values from an expert with special knowledge in the field of real estate sales and marketability. Therefore, in the absence of competent, credible evidence that appellants have been directly affected by the variance, the trial court properly dismissed appellant's administrative appeal for lack of standing.

**{¶24}** Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
LARRY A. JONES, SR., J., CONCUR