[Cite as *Meziane v. Munson Twp. Bd. of Trustees*, 2020-Ohio-5142.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| ANISSA VENESSA MEZIANE, | : | **O P I N I O N** |
| Appellee, | : | |
| | : | **CASE NO. 2020-G-0251** |
| - vs - | : | |
| MUNSON TOWNSHIP BOARD OF TRUSTEES, | : | |
| | : | |
| Appellant. | | |

Civil Appeal from the Geauga County Court of Common Pleas.
Case No. 2019 A 000290.

Judgment: Affirmed.

*Dennis J. Ibold*, Ibold & O'Brien, 401 South Street, Chardon, OH 44024 (For Appellee).

*Susan T. Wieland*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Chardon, OH 44024 (For Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Munson Township Board of Trustees appeals from the April 21, 2020 decision and judgment of the Geauga County Court of Common Pleas, granting the administrative appeal of Anissa Venessa Meziane ("Ms. Meziane") and reversing a decision of the Munson Township Board of Zoning Appeals ("BZA"). At issue on appeal is whether Ms. Meziane had standing to appeal the BZA's decision to the Court of

Common Pleas. Concluding she did have standing to appeal, we affirm the decision and judgment of the lower court.

{¶2} Cynthia Gray ("Ms. Gray") owns property on Bass Lake Road, which is in a Geauga County district that requires a minimum of five acres per dwelling unit. Ms. Gray applied for an area variance to split her six-acre property into two sections; one section would have a 100-foot frontage, which also necessitates an area variance from the required 200-foot frontage. A hearing before the BZA was held on February 21, 2019. Of 23 other property owners who were notified of the hearing, Ms. Meziane was the only one to appear. She appeared in person, without counsel, and testified in opposition to the variance. Upon receiving a 4 to 1 vote, the BZA approved Ms. Gray's variance request, allowing her to split her six-acre property into one 3.5 acre lot and one 2.5 acre lot.

{¶3} Ms. Meziane appealed this decision to the Geauga County Court of Common Pleas. The Board of Trustees opposed, arguing Ms. Meziane lacked standing to appeal. The lower court held that Ms. Meziane had established standing and reversed the BZA's decision on the merits. "After presuming the BZA's decision was reasonable and valid, giving deference to the BZA's resolution of evidentiary conflicts, recognizing no one factor is determinative, and reviewing the transcript," the lower court found and determined that "the BZA's determination is not supported by a preponderance of substantial, reliable, and probative evidence. The BZA's decision is unreasonable."

{¶4} From this judgment, filed April 21, 2020, the Board of Trustees asserts one assignment of error for our review:

2

{¶5} "The trial court erred by finding that appellee, as an affected property owner, had standing to appeal the decision of the Board of Zoning Appeals when appellee stated on the record that she would not fight the granting of the variance."

{¶6} On appeal, the Board of Trustees challenges the lower court's decision only as to its conclusion that Ms. Meziane had standing to appeal the BZA decision. The issue of standing to assert a claim or to notice an appeal is a question of law, which is reviewed de novo. *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶23.

{¶7} In the context of an administrative decision, the right to appeal must be conferred by statute. The party seeking to appeal has the burden of establishing the right to do so. *Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177 (2001).

{¶8} Appeals *to* the board of zoning appeals are governed by R.C. 519.15: "[a]ppeals to the board of zoning appeals may be taken by any person aggrieved or by any officer of the township affected by any decision of the administrative officer."

{¶9} Appeals *from* the board of zoning appeals are governed by R.C. 2506.01: "every final order, adjudication, or decision * * * may be reviewed by the court of common pleas of the county in which the principal office of the political subdivision is located[.]" R.C. 2506.01(A). "As used in this chapter, 'final order, adjudication, or decision' means an order, adjudication, or decision that determines rights, duties, privileges, benefits, or legal relationships of a person[.]" R.C. 2506.01(C). "The appeal provided in this section is in addition to any other remedy of appeal provided by law." R.C. 2506.01(B).

{¶10} R.C. 2506.01 does not provide for *who* may appeal from the decision of a board of zoning appeals to a court of common pleas. The common-law doctrine of standing provides that "'[a]ppeal lies only on behalf of a party aggrieved by the final order appealed from.'" *Midwest Fireworks*, *supra*, at 177, quoting *Ohio Contract Carriers Assoc., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160 (1942), syllabus.

{¶11} "An 'aggrieved' party is one whose interest in the subject matter of the litigation is "'immediate and pecuniary, and not a remote consequence of the judgment.'" * * * A future, contingent, or speculative interest is not sufficient to confer standing to appeal." *Id.*, quoting *Ohio Contract Carriers*, *supra*, at 161, quoting 2 American Jurisprudence, Appeal and Error, Section 50, at 942 (1936). "Thus, in order to have standing to appeal, a person must be 'able to demonstrate a present interest in the subject matter of the litigation which has been prejudiced' by the judgment appealed from." *Id.*, quoting *Willoughby Hills v. C.C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26 (1992).

{¶12} The Supreme Court of Ohio, in a series of cases, has addressed standing in the context of board of zoning appeals under R.C. 2506.01. The Court first recognized that the right to appeal is not necessarily limited to the property owner whose requested variance is denied. *Roper v. Richfield Twp. Bd. of Zoning Appeals*, 173 Ohio St. 168, 173 (1962) ("This 'heads I win, tails you lose' position is contrary to the intention of the Legislature[.]").

{¶13} "Adjacent or contiguous property owners who oppose and participate in the administrative proceedings concerning the issuance of a variance are equally entitled to seek appellate review under R.C. 2506.01." *Willoughby Hills*, *supra*, at 26,

4

citing *Roper*, *supra*, at syllabus. However, this private property owner only has "standing to complain of harm which is unique to himself," "as distinguished from the public at large." *Id.* at 27. These common law rules are often centralized to a statement that, if a private property owner "actively participated" in the administrative proceedings, then it has standing to appeal from the BZA's decision and argue it is "directly affected" by the zoning variance. *Id.* at 26-27; *Schomaeker v. First Natl. Bank of Ottawa*, 66 Ohio St.2d 304, 311-312 (1981); *see also Midwest Fireworks*, *supra*, at 178 and *In re Partition for Incorporation of the Village of Holiday City*, 70 Ohio St.3d 365, 371 (1994).

{¶14} Additionally, Ohio appellate courts have not limited third-party standing under R.C. 2506.01 to adjacent or contiguous property owners, stating that courts ""must look beyond physical proximity to demonstrate if the order constitutes a determination of the rights, duties, privileges, benefits or legal relationships of a specified person."" *Safest Neighborhood Assoc. v. Athens Bd. of Zoning Appeals*, 4th Dist. Athens Nos. 12CA32, *et seq.*, 2013-Ohio-5610, ¶26, quoting *Jenkins v. Gallipolis,* 128 Ohio App.3d 376, 382 (4th Dist.1998), quoting *Am. Aggregates Corp. v. Columbus*, 66 Ohio App.3d 318, 322 (10th Dist.1990); *see also* R.C. 519.15 ("Upon the hearing, *any* person may appear in person or by attorney.") (emphasis added).

{¶15} Here, the Board of Trustees contends Ms. Meziane did not demonstrate that she is "directly affected" by the zoning variance granted to Ms. Gray's property. As stated above, we review this issue de novo.

{¶16} As of February 21, 2019, when the BZA hearing was held, Ms. Gray had owned her property for approximately one year. Ms. Meziane had owned the property

5

across the street for approximately two years. The minutes of the BZA hearing state as follows, in relevant part:

> [Chairperson of the Board] Mr. Pilawa stated for the record that 23 affected property owners were notified in Case 19-01. Anissa Meziane of 12058 Bass Lake Road was sworn in. She purchased the farm across the street and was interested in purchasing Ms. Gray's property. She went over to talk with Ms. Gray who said she was renovating. The price was raised significantly from the initial price. Ms. Meziane explained she has bought up several properties in the area and did not want to see the parcel split. She put one million into her farm and bought it for one-half million. She commented that Ms. Gray's house still looks like an eyesore and the red front door has not been changed. She said if she bought it she would rip the house down and make the property agricultural.
>
> Mr. Pilawa explained that whether or not Ms. Gray gets the variance, the home will stay because the building pre-dates zoning and is grandfathered in. He explained the law is you cannot require someone to retrofit a structure. Ms. Meziane commented that she assumed with the work she has put into her farm that the front door on Ms. Gray's house would be changed. She did not want another house across from her.
>
> Mr. Pilawa explained the focus is the property split. Twenty-three people were notified and twenty-two others did not show up. Ms. Meziane said she could not speak for those people. * * *
>
> Ms. Gray mentioned she is still more than willing to sell. When the real estate agent set the price, they did not talk about splitting the property. * * *
>
> * * * Mr. Pilawa told Ms. Meziane that he did not know whether she was going to be happy either way – approving or disapproving the variance. Ms. Meziane reiterated she did not want a building there. * * *
>
> * * * [Board Member] Mr. Kearns commented that if the door were changed, perhaps that would help solve the scenario.
>
> * * * Mr. Pilawa explained that from time to time an applicant can ask for a continuance, and perhaps an agreement could be reached between two people, but it is exclusively the applicant's choice. * * *

Ms. Gray agreed the front of the home still needs work, but she cannot paint until April. * * * Ms. Gray commented that Ms. Meziane had told her she was done discussing a sale and now has dramatically changed her mind. Ms. Gray did not want a continuance.

* * * Ms. Meziane interjected that her property is long and runs the length of Lake Road to Blue Heron and other people are not as affected.

{¶17} These minutes generally reflect the transcript of testimony. Ms. Meziane further testified that she recently purchased multiple properties around the area, including the one across from Ms. Gray's, and was trying to "fix them up." She told Ms. Gray that she was interested in purchasing her entire lot and did not want anybody building on it. Ms. Meziane testified that if she bought the lot from Ms. Gray, she would tear down the existing farmhouse and "put something nice there or have more agricultural because that's what I want the area to be. * * * I'm very upset the way it looks over there, and there's no excuse for taking this long. But anyway, I don't want the property split up. * * * She's doing whatever she wants to do with the house right now. But I didn't want the property split up because I didn't want another building across the street from me, I mean another house, right there in that small area. It's so small." When requested by the board members to explain more specifically why she is opposed to the lot split, Ms. Meziane stated, "I was interested in buying the property." She subsequently explained:

My property is long. * * * [M]y farm is the length of Bass Lake, from Lake Road until * * * right before that Blue Heron Road. So really the other 22 people * * * would not be as affected because across the street there, you know, is the sand place. They own that over there, where they have the sand thing. And then her property is there. And mine is the whole length, so it's me. That's who's affected. Everybody else is on this end. I mean, if you've really driven by Bass Lake Road, the other properties are all further

7

down, so there's nobody even there. There's nobody there. There's one – there's somebody next to her, next door to her, but it's a very run down must be 100-year-old house also. That would be the only person that's affected, and the other ones are on Blue Heron. Otherwise, I bought the properties – one, two, three – four properties all the way there. I bought those properties, so it's me.

{¶18} From its review of the transcript of proceedings, the transcript of the docket, and written briefs, the lower court reached the following conclusion:

Although Ms. Meziane did not bring an expert witness or data, she is a property owner. 'An owner of real property is competent to testify regarding his or her opinion of the value of that property.' *City of Kent v. Atkinson*, 11th Dist. Portage No. 2010-P-0084, 2011-Ohio-6204, ¶44 (citations omitted). Ms. Meziane clearly believes a lot split would make her property and the area less attractive, less desirable, less agricultural, and less valuable. As an adjacent landowner, Ms. Meziane has demonstrated a direct affect [sic].

{¶19} We agree with this conclusion. Ms. Meziane's testimony established an immediate and pecuniary interest in the zoning of Ms. Gray's property. She did not merely indicate her dissatisfaction with the current state of the property, her thwarted desire to purchase the property, and her objection to another residence being built on the property. She also demonstrated the zoning variance would have a direct effect on her rights as a property owner, as opposed to the other property owners who did not appear at the hearing, because her property is the only one that faces the entire length of Ms. Gray's property. Ms. Meziane also owns other properties in the immediate vicinity.

{¶20} Because Ms. Meziane appeared before the BZA to oppose the zoning variance and because the BZA's decision affected and determined her rights as a property owner, we hold that she is within the class of persons entitled to appeal under R.C. 2506.01. *See Schomaeker, supra*, at 312; *see also Groffre Invests. v. Canton Bd.*

8

*of Zoning Appeals*, 5th Dist. Stark No. 2012-CA-00091, 2013-Ohio-1227, ¶22 (finding unique harm where directly related to an investment in contiguous property).

{¶21} Accordingly, we conclude that the Board of Trustees' contention that Ms. Meziane lacked standing to appeal because she was not a "person aggrieved" or "directly affected" by the zoning variance is not well taken.

{¶22} The Board of Trustees further contends that Ms. Meziane did not have standing to appeal because she appeared before the BZA without counsel and did not advise the BZA on the record that she intended to appeal an adverse decision.

{¶23} These arguments take root from this court's opinion in *Hofer*, in which it was stated that "a person has standing to appeal a Board of Zoning Appeals decision under R.C. 2506.01 as a party to the proceedings if he: '(1) was a resident, elector, and property owner of the township directly affected by the zoning change, (2) * * * appeared before a township board of zoning appeals with an attorney to protest the zoning change, and (3) * * * stated his [or her] intention on the record to appeal the board's decision to the common pleas court.'" *Hofer v. N. Perry Bd. of Zoning Appeals*, 11th Dist. Lake No. 2007-L-165, 2008-Ohio-6876, ¶16-17, quoting *Kraus v. Put-In-Bay Twp. Bd. of Zoning & Appeals*, 6th Dist. Ottawa No. OT-04-011, 2004-Ohio-4678, ¶15.

{¶24} This holding, in turn, relies on the Supreme Court's syllabus in *Roper*:

> A resident, elector and property owner of a township, who appears before a township Board of Zoning Appeals, is represented by an attorney, opposes and protests the changing of a zoned area from residential to commercial, and advises the board, on the record, that if the decision of the board is adverse to him he intends to appeal from the decision to a court, has a right of appeal to the Common Pleas Court if the appeal is properly and timely made pursuant to Sections 519.15 and 2506.01 to 2506.04, inclusive, and Chapter 2505, Revised Code.

9

{¶25} When read in isolation, the *Roper* syllabus could be regarded as requiring a property owner to have legal representation and to advise the board that he or she intends to appeal an adverse decision. We are guided by the principle, however, that the syllabus must be read "along with, and in the context of, the text of the Supreme Court's opinion." *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶18 (10th Dist.); *see also Fenner v. Parkinson*, 69 Ohio App.3d 210, 214 (10th Dist.1990) (the syllabus "is not to be regarded as absolutely controlling authority in other cases where the material facts are different").

{¶26} Former Rule 1(B) of the Supreme Court Rules of Reporting Opinions stated, "The syllabus of a Supreme Court opinion states the controlling point or points of law decided in and necessarily arising from the facts of the specific case before the Court for adjudication." Rule 2.2 currently provides, "The law stated in an opinion of the Supreme Court shall be contained in its text, including its syllabus, if one is provided, and footnotes." Even when the former rule was in effect, the Supreme Court consistently held that "[t]he syllabus of a Supreme Court opinion [was] not to be construed as being broader than the facts of that specific case warrant." *State v. McDermott*, 72 Ohio St.3d 570, 574 (1995) (citations omitted); *Williamson Heater Co. v. Radich*, 128 Ohio St. 124, 126 (1934) ("When obiter creeps into a syllabus, it must be so recognized and so considered."); *see also State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.*, 856 F.Supp. 1229, 1233-34 (S.D.Ohio 1994) ("the syllabus cannot be understood in a vacuum").

{¶27} The text of the *Roper* opinion explains and concludes as follows:

> Nagy [the zoning applicant] would relegate Roper [the third-party property owner] to the role of a witness. A reading of the record,

10

however, does not bear out this contention. Roper came to this hearing not as a witness, and he appeared not as a witness. He came as a person whose interests were adversely affected, and he appeared with his lawyer in person in opposition to a zoning change which would damage Roper and his property. He was present pursuant to the language in Section 519.15, Revised Code, that 'upon the hearing, *any party* may appear in person or by attorney.' (Italics supplied.)

The order of the Board of Zoning Appeals affected and determined Roper's rights as a property owner, and thus he came within the class of 'specified' persons referred to in Section 2506.01, Revised Code. The board was advised prior to its decision that, if it decided adversely to Roper, his attorney intended to appeal the matter.

These facts are sufficient to make Roper a party for the purpose of appeal to the Common Pleas Court from an adverse decision of the Board of Zoning Appeals, pursuant to Sections 519.15 and 2506.01 to 2506.04, inclusive, and Chapter 2505, Revised Code.

*Roper, supra*, at 173-174.

{¶28} Thus, reading the *Roper* syllabus in the context in which it was decided, we are convinced the Supreme Court did not intend to provide in its syllabus an exhaustive list of what is required for a property owner to have standing to appeal an administrative decision under R.C. 2506.01. The *Roper* opinion, in context, does not hold that a property owner is required to have legal representation and to announce an intention to appeal an adverse decision. Rather, the syllabus describes the property owner's actions in that particular case, which the Supreme Court found were sufficient to imbue him with legal standing to appeal.

{¶29} This view is not unique; it is, in fact, supported by the plain language of the statutes and by the prevailing weight of authority in Ohio.

{¶30} R.C. 519.15 provides that an appeal to the BZA "may be taken by *any* person aggrieved" and "[u]pon the hearing, *any* person may appear in person *or* by

11

attorney" (emphasis added). R.C. 2506.01(C) describes a class of persons who may be permitted to appeal from an administrative agency as those whose "rights, duties, privileges, benefits, or legal relationships" have been determined by a "final order, adjudication, or decision."

{¶31} Accordingly, the Supreme Court has consistently held that third-party standing requires an oppositional appearance by the person aggrieved or that person's representative (i.e., active participation), whose rights as a property owner have been affected and determined by a decision of the board of zoning appeals (i.e., directly affected or uniquely harmed). This has been a distinguishing fact-intensive inquiry in each opinion. First, in *Roper*, followed by *Schomaeker*, *Willoughby Hills*, and *Midwest Fireworks*.

{¶32} Notably, none of the latter three opinions have applied the *Roper* syllabus to mean that a person may appeal only if they were represented by counsel and announced their intention to appeal at the public hearing. *Schomaeker*, *supra*, at 312 ("Since the order affected and determined plaintiff's rights as a property owner, and she had previously indicated her interest, both by a prior challenge to the grant of a certificate of occupancy and by her presence with counsel at the hearing on the variance, plaintiff is properly within that class of persons with standing to bring a direct appeal pursuant to R.C. Chapter 2506."); *Willoughby Hills*, *supra*, at 27 ("In other words, since the property owner [in *Schomaeker*] was a person 'directly affected' by the order of the planning commission, she possessed standing to seek review in the courts of common pleas."); *Midwest Fireworks*, *supra*, at 179 ("under the facts of this case, Carver is a 'person aggrieved' within the meaning of R.C. 519.15 and, therefore, he has

12

standing to appeal the decision of Deerfield Township granting a zoning certificate to Midwest Fireworks.").

{¶33} Each appellate district in Ohio that has dealt with this issue has applied the Supreme Court opinions in likewise manner. It appears the Seventh District has not yet had occasion to do so. *See, e.g.*, *Safest Neighborhood Assoc. v. Athens Bd. of Zoning Appeals*, 4th Dist. Athens Nos. 12CA32, *et seq.*, 2013-Ohio-5610, ¶30 ("[W]e do not read the Court's statement in *Roper* as an exhaustive list of requirements that a third party must meet to have standing to appeal an administrative agency's decision. Rather, we view this statement as descriptive of Roper's actions in that case, not prescriptive as [the appellant] contends."); *Groffre Invests. v. Canton Bd. of Zoning Appeals*, 5th Dist. Stark No. 2012-CA-00059, 2013-Ohio-1131, ¶26 (the fact that Roper appeared with his attorney does not mean that standing is precluded when only one, either the property owner or the attorney, chooses to actively participate) and ¶35 (active participation is sufficient to indicate an intent to appeal any adverse decision); *Lupo v. Columbus*, 10th Dist. Franklin No. 13AP-1063, 2014-Ohio-2792, ¶29 (rejecting the contention that an appellant must announce at the administrative hearing his or her intention to appeal an adverse decision); *Alesi v. Warren Cty. Bd. of Commrs.*, 12th Dist. Warren Nos. CA2013-12-123, *et seq.*, 2014-Ohio-5192, ¶20 (emphasis added) ("The 'active-participation' element requires that the third party must have actively participated in an administrative hearing by attending the hearing personally, *or* through a representative, and voicing opposition to the proposed property use."); *Bishop v. Marion Twp. Bd. of Zoning Appeals*, 3d Dist. Hancock No. 5-97-29, 1997 WL 765633, *2 (Dec. 10, 1997); *Robin's Trace Homeowners' Assoc. v. Green Planning & Zoning*

*Comm.*, 9th Dist. Summit No. 24872, 2010-Ohio-1168, ¶8; *Lofino's, Inc. v. Beavercreek City Council*, 2d Dist. Greene No. 2008 CA 61, 2009-Ohio-4404, ¶21-22; *Philbin v. Cleveland*, 8th Dist. Cuyahoga No. 105356, 2017-Ohio-9162, ¶15; *Citizens Against Blasting on Our Miami v. Anderson Twp. Bd. of Zoning Appeals*, 1st Dist. Hamilton Nos. C-120011, *et seq.*, 2012-Ohio-6145, ¶14-15; *Westgate Shopping Village v. Toledo*, 93 Ohio App.3d 507, 513 (6th Dist.1994) ("The Ohio Supreme Court, however, in further explaining the standing requirements, has narrowed the focus of inquiry to whether the appellant's property rights were directly affected by the administrative order appealed from.") (all cases citing *Schomaeker, supra*, at 311-312 and/or *Willoughby Hills, supra*, at 26-27). *But see Kraus v. Put-In-Bay Twp. Bd. of Zoning & Appeals*, 6th Dist. Ottawa No. OT-04-011, 2004-Ohio-4678, ¶18 ("While the Krauses are contiguous property owners whose property rights would have been negatively and uniquely affected by the zoning change, they failed to meet the other two requirements set forth in the *Roper* case. They did not personally appear with counsel and they did not indicate their intent to appeal the board's decision if it was unfavorable to their position.").

{¶34} This court, too, has implicitly declined to apply the *Roper* syllabus in an uncontextualized manner. In a decision subsequent to *Hofer*, we followed the statement of law in *Midwest Fireworks* and held that a limited liability company had standing to appeal from a decision of the zoning commission because it "is a contiguous property owner, actively participated during the administrative proceedings, and claims to be adversely affected" by the conditional use variance. *Byers DiPaola Castle, LLC v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2010-P-0063, 2011-Ohio-6095, ¶29-32, citing *Midwest Fireworks, supra*, at 177.

14

{¶35} Further, in the *Hofer* opinion itself, a majority of this court held that the appellants did not have standing to appeal to the court of common pleas because they had not demonstrated that they were directly affected by the BZA's decision. Although the majority opinion cited to the syllabus in *Roper* as prerequisites for standing, it did not reach the issue of legal representation and announcement of an intention to appeal at the public hearing. *Hofer*, *supra*, at ¶19. Thus, we distinguish the reference to that portion of the *Roper* syllabus as dicta; it is plainly not a holding of the *Hofer* opinion.

{¶36} Our final note is that, as the Supreme Court of Ohio has cautioned courts to remember, "standing is not a technical rule intended to keep aggrieved parties out of court. '"Rather, it is a practical concept designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented."'" *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶47, quoting *Fort Trumbull Conservancy, LLC v. Alves,* 262 Conn. 480, 486 (2003), quoting *Maloney v. Pac*, 183 Conn. 313, 320 (1981).

{¶37} The consistent focus for standing to appeal has always been active participation by one who is directly affected by a board of zoning appeals decision. Accordingly, we decline to apply *Hofer* in the manner that is urged here by the Board of Trustees.

{¶38} We reiterate that a private property owner is not required to have legal representation or to announce an intention to appeal an adverse decision during the administrative proceedings. In order to establish standing to appeal from a board of zoning appeals' decision, the private property owner must participate in the

15

administrative proceedings, either personally or through a representative, by opposing the proposed zoning variance on the basis that he or she will be uniquely harmed.

{¶39} Accordingly, the Board of Trustees' contention that Ms. Meziane lacked standing because she appeared without counsel and did not announce her intention to notice an appeal is not well taken.

{¶40} The Board of Trustees' sole assignment of error is without merit. The trial court did not err by concluding that Ms. Meziane was within the class of persons entitled to appeal the BZA's decision under R.C. 2506.01.

{¶41} The Board of Trustees has not assigned error to the lower court's decision to reverse the BZA's decision on the merits.

{¶42} The judgment of the Geauga County Court of Common Pleas is therefore affirmed.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.