[Cite as *In re C & C Children*, 2022-Ohio-3751.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE:  C & C CHILDREN | : | APPEAL NO. C-220358 |
| | | TRIAL NO. F15-2429Z |
| | : | |
| | : | *O P I N I O N.* |

Appeal From:  Hamilton County Juvenile Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal: October 21, 2022

*Jon R. Sinclair*, for Appellant grandmother,

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Patsy Bradbury*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Masha Pupko*, Assistant Public Defender, for Appellee Attorney Guardian ad Litem for the minor children.

**MYERS, Presiding Judge.**

{¶1}    In a single assignment of error, grandmother, the former legal custodian of her three grandchildren, appeals the judgment of the Hamilton County Juvenile Court awarding permanent custody of the children to the Hamilton County Department of Job and Family Services ("HCJFS"), and failing to award legal custody to her.  The children's guardian ad litem and HCJFS ask this court to affirm the juvenile court's judgment.

### Facts and Procedural History

{¶2}    Grandmother initially petitioned for custody of the children in 2015 and obtained legal custody of them in 2016.  At the time, the children were ages eight, seven, and six years old.

{¶3}    Two years later, in September 2018, HCJFS obtained interim custody of the children after grandmother was arrested for child endangering involving the oldest child, as well as obstructing official business.  HCJFS filed a complaint for temporary custody.

{¶4}    The children's father has never participated in the proceedings.  Their mother appeared with counsel at some points, but eventually informed the magistrate on the record that she was not seeking the return of the children to her care.  Grandmother participated in some of the proceedings but failed to appear at a February 2019 adjudication-and-disposition hearing.

{¶5}    Following that hearing, the magistrate issued findings of fact.  The magistrate found that grandmother's child-endangering charge involved an incident where the oldest child had to be rescued from the Miami River during a school day, after grandmother had taken him out of school for the day and then lost track of him.  When law enforcement contacted grandmother to ask if she knew where the child was, she told them he was at the hospital with her ill husband.  Law enforcement

determined that she was not being truthful, so, in addition to the child-endangering charge, she was charged with obstructing official business.

{¶6}    The magistrate found that an HCJFS caseworker had discovered numerous bruises on the oldest child's arms and legs, in various stages of healing.  The child reported that grandmother caused the bruises by beating him.  He said that his siblings were also beaten, and that he was singled out and beaten more frequently and to a greater extent.

{¶7}    The magistrate found that the school's police resource officer and social worker had observed grandmother's exhibition of wide mood swings and behavior that created the impression that she could be suffering from a mental illness or impairment due to substance abuse.  In addition, grandmother was unable to effectively manage the children's behaviors.

{¶8}    The magistrate found that neither mother nor father had significant involvement in their children's lives. Mother lived in Indiana at the time, where there was an action pending to terminate her parental rights regarding younger children who had been in her care.

{¶9}    The magistrate adjudicated the oldest child abused and all three children neglected and dependent, and awarded temporary custody to HCJFS.  The juvenile court approved the magistrate's decision and entered it as the court's judgment.

{¶10}  Grandmother failed to appear at an April 2019 review hearing.  In his decision from that date, the magistrate found that grandmother had not visited the children or engaged in reunification services.  The older two children were living in the same foster home, and the youngest was in another home.  The children were adjusting to their placements and were receiving mental-health services.

{¶11}  Grandmother pled guilty to the child-endangering charge in exchange for dismissal of the obstructing charge, and the municipal court sentenced her to

community control. When she tested positive for opiates and failed to report to her probation officer, a community-control-violation complaint was filed, and a warrant was issued for grandmother's arrest.

{¶12} Grandmother failed to appear at a May 2019 juvenile-court hearing, and the magistrate's order from that date indicated that grandmother had not been in touch with HCJFS, had not visited with the children, and had a pending warrant for her arrest.

{¶13} After grandmother was found guilty of violating community control on the child-endangering charge, the municipal court terminated her community control and sentenced her to six months in jail. While grandmother was incarcerated, HCJFS filed a motion to modify temporary custody to permanent custody.

{¶14} In September 2019, the municipal court mitigated grandmother's six-month jail sentence and placed her back on community control because she had successfully completed a drug-treatment program in jail. After her release, grandmother met with the family's HCJFS caseworker and began making progress in the reunification case plan.

{¶15} In May 2020, because grandmother was progressing in her case plan, HCJFS filed a motion seeking to extend temporary custody. The motion indicated that grandmother had completed a diagnostic assessment, and had begun substance-abuse treatment, visitation, and parenting classes.

{¶16} The following month, HCJFS withdrew its permanent-custody motion, and the parties agreed to an extension of temporary custody. The magistrate ordered grandmother to obtain housing and income, obtain an updated assessment, complete any treatment recommendations, comply with random drug screens, complete parenting classes, and visit the children.

{¶17} Within two months, on August 13, 2020, HCJFS again moved for permanent custody, alleging that grandmother had failed to visit the children or

comply with her case plan. Prior to trial on the motion, grandmother filed a pretrial statement in which she expressed her desire for either reunification with her grandchildren or an extension of temporary custody to HCJFS so that she could continue to work toward reunification.

{¶18} Grandmother appeared with counsel at the two trial dates set for the permanent-custody motion. When the magistrate granted the motion, grandmother objected. The juvenile court sustained her objection because it could not conduct an independent review where testimony of a witness had not been transcribed due to technical problems. The court remanded the matter for the magistrate to rehear the testimony.

{¶19} After rehearing the testimony, the magistrate again granted the permanent-custody motion. Although neither parent objected to the decision terminating their parental rights, grandmother objected to the denial of her request for custody. The juvenile court overruled her objections and awarded permanent custody of the children to HCJFS.

{¶20} Neither parent appeals the juvenile court's permanent-custody award, but grandmother appeals the denial of her request for legal custody. In a single assignment of error, she argues that the juvenile court erred by granting permanent custody to HCJFS and by failing to issue an order extending temporary custody.

{¶21} Where neither mother nor father filed objections to the magistrate's decision terminating their parental rights, and neither party appealed the juvenile court's judgment, grandmother has no standing to appeal the juvenile court's award of permanent custody. *See In re T.M.*, 1st Dist. Hamilton No. C-210480, 2021 Ohio App. LEXIS 4454, ¶ 14 (Dec. 22, 2021). However, as HCJFS correctly points out, grandmother does have standing to appeal the denial of her request for legal custody. *See id.* at ¶ 15. Therefore, her appeal "is limited to the denial of her custody motion,

and not whether the juvenile court otherwise complied with R.C. 2151.414 in terminating the parental rights of [the children's] mother and father." *Id.*

### Legal Custody

**{¶22}** If a child is adjudicated abused, neglected, or dependent, a juvenile court may award legal custody of the child to a nonparent. R.C. 2151.353(A)(3). In determining whether to grant legal custody to a petitioner, the court must base its decision on the best interest of the children, which can include an examination of the best-interest factors in R.C. 2151.414(D). *Id.* at ¶ 17; *In re F.B.D.*, 1st Dist. Hamilton No. C-180356, 2019-Ohio-2562, ¶ 11.

**{¶23}** R.C. 2151.414(D)(1) sets forth the following best-interest factors:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custody history of the child * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

**{¶24}** We review a juvenile court's decision regarding legal custody for an abuse of discretion. *F.B.D.* at ¶ 11. The juvenile court abuses its discretion when its best-interest determination is not supported by competent and credible evidence. *Id.*

{¶25} Here, the juvenile court did not abuse its discretion. The court considered each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (d) in relation to grandmother. It did not, and could not consider R.C. 2151.414(D)(1)(e), as it applies only to the parents and child.

{¶26} With respect to subdivision (a), the court found that the oldest child reported being abused by grandmother and that he had had no contact with her from the time he left her care in September 2018. Grandmother had no contact with the other two children since March 2020. The children were doing well in their foster placements. With respect to (b), the court found that all three children wished to remain in their foster homes. As to (c), the court found that the children had been in grandmother's custody from 2009 until 2018. As to (d), the court found that grandmother was unable to provide a legally secure permanent placement because she does not have stable housing and only recently obtained employment.

{¶27} Grandmother does not challenge any of the court's findings under R.C. 2151.414(D)(1)(a) through (c); she takes issue only with the court's best-interest finding under subdivision (d). She argues that a legally secure permanent placement could have been achieved by granting an extension of temporary custody, rather than granting permanent custody. She contends that the court did not consider her progress through drug treatment and that the visitation records reflected that she had "many regular and quality visits" with the children prior to the interruption by COVID. However, the record shows that the court considered that evidence, along with all of the other evidence presented, when it determined that permanent custody was in the children's best interests.

{¶28} According to HCJFS caseworker Rachel Butler, grandmother had no contact with any of the children from September 2018 through her release from jail in September 2019. Grandmother had no visitation with the oldest child since his

removal from her care in September 2018 because the child expressed that he had no desire to have contact with his family, including grandmother.

{¶29} The visitation records from the Family Nurturing Center ("FNC") indicated that grandmother was referred to FNC in September 2019 and began visitation services with the younger two children in November 2019. Grandmother was late to her first two appointments, which then had to be cancelled. But she attended the next 16 visits through mid-March 2020, when visits were paused due to COVID. However, she never progressed from the most restricted level of supervision.

{¶30} By April 2020, FNC had resumed visitation services via video visits, and by June 2020, it had begun scheduling in-person visits. Although FNC reached out to grandmother twice in May 2020 to schedule visitation, she never returned the calls. According to Butler, grandmother stopped visiting with the children. And, although grandmother had purchased cell phones for the children, they were unable to reach her using the phones. Butler said the youngest would try to call grandmother multiple times a day and that he would get very upset due to grandmother's failure to answer or return his calls. According to Butler, there were several periods of time, each in excess of 90 days, when grandmother failed to visit with the younger two children. And Butler testified that there were significant periods of time during which the agency was unable to make contact with grandmother.

{¶31} Grandmother discussed with Butler her history of substance abuse, stating that she became addicted to opiates, that her drug of choice was heroin, and that she had started using heroin when the children were living with her. Grandmother explained that many of the gaps in her contact with the agency and in visitation occurred because she had started using drugs again. Grandmother told Butler that in December 2018, she had participated in a drug-treatment program, but had been unsuccessful and had begun using drugs again. Butler said that, at the end of 2019, grandmother unsuccessfully engaged in drug treatment and had to be

8

discharged from the program. Butler testified that she knew of at least three of grandmother's relapses from sobriety that occurred after the children were removed from her care.

**{¶32}** According to Butler, grandmother was not compliant with the substance-abuse-treatment portion of her case plan or the requirement that she submit to random drug screens. Grandmother had not submitted to a drug screen since 2020. Butler lost contact with grandmother in March or April 2020. Butler testified that, to her knowledge, grandmother had not been successfully discharged from any of her drug-treatment programs.

**{¶33}** Butler testified that as of March 2022, the agency still had concerns about grandmother's mental health and substance abuse. She said the status of grandmother's sobriety, housing, and employment were unknown. Two of the children had expressed to Butler that they wanted no contact with grandmother. The third child had not spoken to Butler about it. Butler said the agency did not support a return to grandmother's care.

**{¶34}** Butler said that the middle child was bonded with her foster mother, who expressed a desire to become a long-term placement for her. The oldest child was very happy in his foster placement and his foster parents had an interest in providing a permanent home for him. The youngest child, who struggled the most, was happy in his foster home and was able to transition into a regular school setting. Overall, he was doing very well in his placement.

**{¶35}** The juvenile court's best-interest finding under R.C. 2151.414(D)(1)(d), that the children's needs for legally secure permanent placement could not be achieved without a grant of permanent custody, was supported by competent and credible evidence. That is the only finding that grandmother challenges. Accordingly, we hold that the juvenile court did not abuse its discretion in denying a return of legal custody to grandmother and in awarding permanent custody to HCJFS.

**{¶36}** Therefore, we overrule the assignment of error and affirm the juvenile court's judgment.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry this date.