[Cite as *In re D.K.*, 2024-Ohio-1149.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

:

IN THE MATER OF:    :    Case No. 23CA1177

D.K.    :

DECISION & JUDGMENT
ENTRY

:

---

APPEARANCES:

Brian T. Goldberg, Cincinnati, Ohio, for Appellant.

Ariana Bowles Norris, Adams County Assistant Prosecutor, West Union, Ohio, for Appellee.

---

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:3-20-24
ABELE, J.

{¶1} This is an appeal from an Adams County Common Pleas Court, Juvenile Division, judgment that granted Adams County Children Services (ACCS), appellee herein, permanent custody of 11-year-old D.K.

{¶2} William Ishmael, appellant herein, and the child's former legal custodian, raises the following assignment of error for review:

> "THE TRIAL COURT ERRED IN TERMINATING THE ISHMAEL'S [SIC] LEGAL CUSTODY OF D.K."

{¶3} On April 24, 2015, appellee filed a complaint that alleged D.K. is a dependent child. The complaint averred that on April 23, 2015, law enforcement arrested the child's mother for felony drug possession. Appellee asked the court to place the child in its temporary custody. On that same date, appellee sought, and received, an ex parte order of temporary custody.

{¶4} On June 12, 2015, the trial court adjudicated the child a dependent child and continued her in appellee's temporary custody. On March 28, 2016, Terry Ishmael (the child's great aunt) and William Ishmael (her husband) asked the court to grant them legal custody of the child. The court subsequently placed the child in the Ishmaels' legal custody and granted appellee protective supervision. On August 26, 2016, the court entered a final judgment that granted the Ishmaels legal custody of the child and that terminated appellee's (ACCS) involvement.

{¶5} On May 6, 2021, appellee filed a motion to modify the disposition that placed the child in the Ishmaels' legal custody and asserted that "new allegations concerning the safety and well-being of the child have been made." Appellee stated that, on May 5, 2021, it received a report "concerning alleged physical abuse and neglect of the child." Appellee indicated

that the child had reported that the Ishmaels permitted two alleged sexual perpetrators, Laura Dryden and Chris Conn, to be around the child, even though appellee instructed the Ishmaels that Conn and Dryden should not be permitted in their home and should have no contact with the child. Appellee thus asked the trial court to place the child in its temporary custody. On that same date, appellee filed a motion for ex parte temporary custody, which the trial court granted.

{¶6} On November 7, 2022, appellee filed a motion for permanent custody. At the February 28, 2023 hearing to consider appellee's permanent-custody motion, Caseworker Michael Tomlin testified that appellee most recently sought temporary custody of the child due to allegations that the Ishmaels allowed the child to have contact with her alleged abusers. Tomlin indicated that appellee conducted a 2022 home study, and the Ishmaels' home did not pass.

{¶7} Appellant testified that the child lived in his home from 2016 until May 2021, when the court placed the child in appellee's temporary custody. He agreed that the court removed the child from his home due to allegations that involved Conn and Dryden.

{¶8} The child's guardian ad litem testified that the child did not appear to be "protected from harm" at the Ishmaels' home

due to their inability to control Conn's and Dryden's contact with the child, even after the child's sexual abuse allegations. The child reported that when she lived with the Ishmaels, she was in charge of making appellant lunch and she also rubbed lotion on his feet. The child also reported being struck with a dog leash. The guardian ad litem explained that she is not certain exactly what happened in the Ishmaels' home, but the doctor who evaluated the child recommended that she not have any contact with them. The guardian ad litem further indicated that the child is "very happy" in the foster home and the foster parents are considering adopting the child if the court grants appellee permanent custody. The guardian ad litem recommended that the court grant appellee permanent custody of the child.

{¶9} On March 7, 2023, the magistrate entered a decision to place the child in appellee's permanent custody. The magistrate noted that the Ishmaels had legal custody of the child until the court placed the child in appellee's temporary custody in May 2021, but terminating the Ishmaels' legal custody was proper due to "a change in circumstance in the legal custodian's home." The magistrate additionally determined that terminating the Ishmaels' legal custody is in the child's best interest. The magistrate further stated that a nonparent cannot be awarded custody unless that nonparent files a written motion with the

court and here no one had filed a written motion that requested legal custody. The magistrate further determined that, even if the Ishmaels had filed a motion for legal custody of the child, "the minor child would be at risk" if the court returned her to their home. The magistrate explained: "During the period of time the child was in the home, she lacked socialization, was edxposed [sic] to abuse, and is only now demonstrating improved behavior and stability."

{¶10} The magistrate also observed that on May 11, 2022, the court terminated visitation between the child and the Ishmaels based upon the outcome of her pediatric assessment. The magistrate noted that the child's doctor "recommended no contact with [the Ishmaels] as it would have a negative effect on her progress made." The magistrate thus concluded that it "cannot find that placing the child in the legal custody of [the Ishmaels] would be in the best interest of the minor child." With respect to appellee's permanent-custody motion, the court found that the child's mother (and father, who remains unknown) has abandoned her, the child has been in appellee's temporary custody for 12 or more months of a consecutive 22-month period, and permanent custody is in the child's best interest. On that same date, the trial court adopted the magistrate's decision.

{¶11} On March 17, 2023, appellant objected to the

magistrate's decision and asserted that (1) the decision is against the manifest weight of the evidence; (2) the "decision fails to establish facts on which a decision may be based"; (3) the magistrate failed to consider his "testimony indicating that he had complied with and completed the case plan"; (4) the magistrate failed to consider the case worker's testimony that he "complied with and completed all case plan goals"; (5) the magistrate failed to consider that he maintained contact with the agency throughout the case; and (6) the magistrate failed to consider the child's best interest.

{¶12} On September 19, 2023, the trial court overruled appellant's objections to the magistrate's decision. In doing so, the court applied the permanent-custody statute and stated that it does "not address whether legal custodians, past or present, are to be given consideration in termination of rights [cases]." The court found that the parents had abandoned the child and that the child has been in appellee's custody for more than 12 out of the past 22 months.

{¶13} The trial court noted that the child's guardian ad litem reported the following:

> A. [The child] reported sexual abuse by Christopher Conn and/or Lora Dryden. Terry Ishmael denied that said sexual abuse could have happened and does not believe the allegations by [the child].

B.   There were several instances of contact between Conn, Dryden and [the child] and they were routinely allowed in the home by Terry Ishmael and hid Conn and Dryden in the bedroom when the Agency conducted an investigation.

C. [The child] exhibited behavior issues after removal from the Ishmaels and reported occurrences of strange behavior by the Ishmaels. [The child] was not protected in the home of the Ishmaels.

D.   After [the child]'s evaluation by Dr. Wagner, it was recommended by Dr. Wagner that [the child] have no further contact with the Ishmaels, for the physical and mental safety of [the child].

{¶14} The trial court thus overruled appellant's objections and found that granting appellee permanent custody of the child is in her best interest.  This appeal followed.

{¶15} In his sole assignment of error, appellant asserts that the trial court erred by terminating the legal-custody order that had placed the child with him.  He contends that (1) no change in circumstances occurred sufficient to warrant the removal of the child from his legal custody, and (2) the removal of the child from his legal custody is not in the child's best interest.

{¶16} Appellee asserts that appellant lacks standing to challenge the trial court's decision to place the child in its permanent custody because appellant did not file a motion for legal custody of the child.

{¶17} Before we consider the merits of appellant's assignment of error, we first consider appellee's argument that appellant lacks standing to appeal the trial court's permanent-custody decision. "Standing is a threshold question for the court to decide in order for it to adjudicate the action." *State ex rel. Jones v. Suster*, 84 Ohio St.3d 70, 77, 701 N.E.2d 1002 (1998). Thus, a person "who attempts to appeal a judgment must meet standing requirements to invoke the jurisdiction of the appellate court." *In re S.G.D.F.*, 10th Dist. Franklin No. 16AP-123, 2016-Ohio-7134, ¶ 11, citing *Ohio Contract Carriers Assn. v. Public Util. Comm. of Ohio*, 140 Ohio St. 160, 161, 42 N.E.2d 758 (1942). "[L]ack of standing vitiates the party's ability to invoke the jurisdiction of a court" to hear an action. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 22.

{¶18} As a general matter, an "'[a]ppeal lies only on behalf of a party aggrieved by the final order appealed from.'" *State ex rel. Gabriel v. Youngstown*, 75 Ohio St.3d 618, 619, 665 N.E.2d 209 (1996), quoting *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160, 42 N.E.2d 758 (1942), syllabus; *accord Goodman v. Hanseman*, 132 Ohio St.3d 23, 2012-Ohio-1587, 967 N.E.2d 1217, 1218, ¶ 1. "Aggrieved means deprived of legal rights or claims." *Snodgrass v. Testa*, 145

Ohio St.3d 418, 2015-Ohio-5364, 50 N.E.3d 475, ¶ 27, quoting *Cononi v. Mikhail*, 2d Dist. Montgomery No. 8161, 1984 WL 5419, *6 (Jan. 10, 1984), citing *In re Annexation in Mad River Twp., Montgomery Cty.*, 25 Ohio Misc. 175, 176, 266 N.E.2d 864 (C.P. 1970); *see also* Black's Law Dictionary 80 (10th Ed.2014) (defining "aggrieved" as "having legal rights that are adversely affected"); *accord Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177, 743 N.E.2d 894 (2001).

{¶19} In order to have standing to appeal, a person must be "'able to demonstrate a present interest in the subject matter of the litigation which has been prejudiced'" by the judgment appealed from. *Midwest Fireworks Mfg. Co. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174, 177, 743 N.E.2d 894 (2001), quoting *Willoughby Hills v. C.C. Bar's Sahara, Inc.*, 64 Ohio St.3d 24, 26, 591 N.E.2d 1203 (1992). Consequently, "a party [ordinarily] does not have standing to prosecute an appeal in order to protect the rights of a third party." *USB Financial Services, Inc. v. Lacava*, 8th Dist. Cuyahoga No. 106256, 2018-Ohio-3165, ¶ 42 (citation omitted). Instead, to have standing to appeal, a party must "assert [his] own rights, not the [rights] of third parties." *North Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, ¶ 14. Thus,

"[a]ppeals are * * * allowed * * * only to correct errors injuriously affecting the appellant.'" *State ex rel. Gabriel v. Youngstown*, 75 Ohio St.3d 618, 619, 665 N.E.2d 209 (1996), quoting *Ohio Contract Carriers Assn.* at syllabus.

{¶20} When a trial court grants a children services agency permanent custody, the decision "divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including all residual rights and obligations." Juv.R. 2(CC).  In the case sub judice, appellant is not the child's natural or adoptive parent.  Thus, the trial court's permanent-custody decision did not divest him of any parental rights, privileges, or obligations.  The decision did, however, effectively confirm the trial court's earlier decision that removed the child from appellant's legal custody and placed the child in appellee's temporary custody.  Consequently, although appellant's parental rights were not at stake, appellant previously had been named one of the child's legal custodians.  Thus, we must determine whether the trial court's permanent-custody decision adversely affected any of appellant's rights as the child's former legal custodian.

{¶21} R.C. 2151.011(B)(21) defines "[l]egal custody" as "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where

and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities." *See also* Juv.R. 2(X). Additionally, legal custody "is intended to be permanent in nature." R.C. 2151.42(B).

**{¶22}** Nonparents who seek to obtain legal custody of a child must follow the procedure set forth in R.C. 2151.353(A)(3). This statute provides that a trial court may award legal custody of a child to "either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings." *See also* Juv.R. 34(D)(3).

The statute also provides:

A person identified in a complaint or motion filed by a party to the proceedings as a proposed legal custodian shall be awarded legal custody of the child only if the person identified signs a statement of understanding for legal custody that contains at least the following provisions:
(a) That it is the intent of the person to become the legal custodian of the child and the person is able to assume legal responsibility for the care and supervision of the child;
(b) That the person understands that legal custody

of the child in question is intended to be permanent in nature and that the person will be responsible as the custodian for the child until the child reaches the age of majority. Responsibility as custodian for the child shall continue beyond the age of majority if, at the time the child reaches the age of majority, the child is pursuing a diploma granted by the board of education or other governing authority, successful completion of the curriculum of any high school, successful completion of an individualized education program developed for the student by any high school, or an age and schooling certificate. Responsibility beyond the age of majority shall terminate when the child ceases to continuously pursue such an education, completes such an education, or is excused from such an education under standards adopted by the department of education and workforce, whichever occurs first.

(c) That the parents of the child have residual parental rights, privileges, and responsibilities, including, but not limited to, the privilege of reasonable visitation, consent to adoption, the privilege to determine the child's religious affiliation, and the responsibility for support;

(d) That the person understands that the person must be present in court for the dispositional hearing in order to affirm the person's intention to become legal custodian, to affirm that the person understands the effect of the custodianship before the court, and to answer any questions that the court or any parties to the case may have.

**{¶23}** Courts have held that a legal custodian does not have standing to appeal a trial court's permanent-custody decision to the extent that it terminates the biological parents' parental rights. *E.g. In re Ez.D.*, 8th Dist. Cuyahoga No. 110447, 2021-Ohio-3041, ¶ 117; *In re B.C.-1*, 4th Dist. Athens No. 14CA43, 2015-Ohio-2720, ¶ 32, citing *In re Matthews*, 3rd Dist. Marion Nos. 9-07-28, 9-07-29, and 9-07-34, 2008-Ohio-276, ¶ 23 (non-

biological father lacked standing to appeal permanent custody decision pertaining to non-biological child); *In re A.L.A.*, 11th Dist. Lake Nos., 2011-L-20 and 2011-L-21, 2011-Ohio-3124, ¶ 2, citing *In re Neff*, 3rd Dist. Allen No. 1-78-9, *2 (June 14, 1978) (step-father lacked standing to appeal trial court's custody decision).  However, some courts have determined that legal custodians may appeal a permanent-custody decision "as it relates to [their] request to maintain legal custody of [the child] and the termination of [their] rights as legal custodian."  *In re E.E.D.*, 2022-Ohio-4014, 200 N.E.3d 738, ¶ 49 (8th Dist.), citing *In re C & C*, 1st Dist. Hamilton No. C-220358, 2022-Ohio-3751, ¶ 21.  These courts thus limit a legal custodian's appeal of a permanent-custody decision to the trial court's "denial of [the custodian's] request to maintain legal custody of [the child] and the termination of [the custodian's] rights as legal custodian." *Id.*

{¶24} Nonparents who do not file a motion to request legal custody of an adjudicated abused, neglected, or dependent child do not, however, have standing to appeal a trial court's decision to grant a children services agency permanent custody of the child.  *E.g., In re K.F.*, 12th Dist. Clermont No. CA2020-10-061, 2021-Ohio-1183, ¶ 74 (because nonparents did not file legal-custody motions, the issue was not before the trial court

and also not before the appellate court); *In re A.B.*, 2018-Ohio-4206, 114 N.E.3d 421, ¶ 5 (6th Dist.) ("a nonparent who never moved to intervene nor moved for legal custody cannot appeal a permanent custody award"), citing *In re Titionna K.*, 6th Dist. Lucas No. L-06-1232, 2007-Ohio-1861, ¶ 5; *In re J.P.*, 12th Dist. Butler Nos. CA2015-08-160 and CA2015-08-161, 2016-Ohio-7, ¶ 8 (nonparent who seeks legal custody of a child must file a motion for legal custody pursuant to R.C. 2151.353(A)(3)); *In re L.R.T.*, 12th Dist. Butler Nos. CA2005-03-071 and CA2005-04-082, 2006-Ohio-207, ¶ 17 ("[b]ecause appellee failed to file a motion requesting legal custody of L.R.T. at least seven days before the dispositional hearing, the trial court erred as a matter of law in awarding legal custody to her," and noting that compliance with procedural requirements of R.C. 2151.353 and Juv.R. 34 "is mandatory").

**{¶25}** In the case sub judice, after the child's May 6, 2021 removal from appellant's home and placement in the agency's temporary custody, appellant did not file a motion for legal custody or a statement of understanding to ask the court to return the child to his legal custody. Appellant's legal status as the child's legal custodian effectively ended in May 2021, when the court placed the child in appellee's temporary custody.

**{¶26}** We also note that "an adjudication that a child is

neglected or dependent, followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2) constitutes a 'final order' for purposes of R.C. 2505.02 and is appealable to the court of appeals pursuant to R.C. 2501.02." *In re Murray*, 52 Ohio St.3d 155, 161, 556 N.E.2d 1169 (1990). Furthermore, "an appeal of an adjudication order of abuse, dependency, or neglect of a child and the award of temporary custody to a children services agency pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 18.

**{¶27}** In the case sub judice, the trial court's May 2021 order that granted ACCS temporary custody does not contain any notification that it was a final order, and the record does not contain any other order, filed before the court's September 19, 2023 decision, that states it is a final order. For this reason, the trial court's May 6, 2021 order, and its subsequent orders that continued the child in appellee's temporary custody, are interlocutory orders that merged into the trial court's final order in the case. *Navistar, Inc. v. Testa*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 38, quoting *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 9 ("'Interlocutory orders * * * are merged into the final

judgment,' with the result that 'an appeal from the final judgment includes all interlocutory orders merged with it'").

**{¶28}** Consequently, the final order in this case is the court's decision to grant appellee permanent custody. Therefore, we believe that appellant has standing to argue that a change in circumstances did not occur to warrant the child's removal from his legal custody. However, because appellant did not file a motion for legal custody of the child or a statement of understanding, appellant lacks standing to challenge the trial court's decision to place the child in appellee's permanent custody.

B

**{¶29}** Additionally, we observe that although appellant filed some objections to the magistrate's decision, he did not object to the magistrate's decision based upon an alleged lack of a change in circumstance under R.C. 2151.42(B). Instead, appellant generally asserted that the magistrate's decision is against the manifest weight of the evidence and the decision "fails to establish facts on which a decision may be based." The juvenile rules require an objecting party to (1) file written objections to a magistrate's decision within 14 days of the decision, (2) state with specificity and particularity all

grounds for objection, and (3) support objections to a magistrate's factual finding with a transcript of the evidence submitted to the magistrate or an affidavit of evidence if a transcript is unavailable.  Juv.R. 40(D)(3)(b)(i)-(iii).

{¶30} Moreover, the juvenile rules prevent a party from assigning "as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Juv.R. 40(D)(3)(b)(iv).  This rule "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal."  *In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist. 1998).  Thus, under Juv.R. 40(D)(3)(b)(iv), a party who does not properly object to a magistrate's decision waives all but plain error.  *See State ex rel. Neguse v. McIntosh*, 161 Ohio St.3d 125, 2020-Ohio-3533, 161 N.E.3d 571, ¶ 9, quoting Civ.R. 53(D)(3)(b)(iv) ("failure to object to the magistrate's decision bars [appellant] from 'assign[ing] as error on appeal the court's adoption of any factual finding or legal conclusion' of the magistrate," and appellate review is therefore limited to plain error); *Tucker v. Hines*, 10th Dist. Franklin No. 18AP-375, 2020-Ohio-1086, ¶ 6 ("party who fails to timely object to a

magistrate's decision is limited by operation of Juv.R. 40(D)(3)(b)(iv) to claims of plain error on appeal"); *In re Z.A.P.*, 177 Ohio App.3d 217, 2008-Ohio-3701, 894 N.E.2d 342, ¶ 15 (4th Dist.).

**{¶31}** For the plain error doctrine to apply, the party that claims error must establish that (1) "'an error, i.e., a deviation from a legal rule'" occurred, (2) the error was "'an "obvious" defect in the trial proceedings,'" and (3) this obvious error affected substantial rights, i.e., the error "'must have affected the outcome of the trial.'"  *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001, 1003 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings.").

**{¶32}** The plain error doctrine is not, however, readily invoked in civil cases.  Instead, an appellate court "must proceed with the utmost caution" when applying the plain error doctrine in civil cases.  *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).  The Ohio Supreme Court has

set a "very high standard" for invoking the plain error doctrine in a civil case. *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 721 N.E.2d 47 (2000).  Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d at 122; *accord Jones v. Cleveland Clinic Found.*, 161 Ohio St.3d 337, 2020-Ohio-3780, 163 N.E.3d 501, ¶ 24; *Gable v. Gates Mills*, 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43.  Moreover, appellate courts "'should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.'"  *Risner v. Ohio Dept. of Nat. Resources*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 28, quoting *Sizemore v. Smith*, 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2; *accord Mark v. Mellott Mfg. Co., Inc.*, 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process.").  Additionally, "[t]he plain error doctrine should never be applied to reverse a civil

judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial." *Goldfuss*, 79 Ohio St.3d at 122.

{¶33} In the case sub judice, appellant did not object to the magistrate's decision based upon a lack of a change in circumstances.  Thus, the trial court did not have an opportunity to review the legal issue that appellant now raises on appeal, i.e., the trial court erred by removing the child from his legal custody because a change in circumstances had not occurred.  Appellant could have raised this argument at any point after May 6, 2021, when the trial court initially removed the child from his legal custody.  He did not.  Consequently, appellant has forfeited all but plain error.  Juv.R. 40(D)(3)(b)(iv).  Appellant did not raise a plain-error argument on appeal, however.  This court ordinarily declines to develop a plain-error argument for an appellant who fails to do so.  *State v. Dailey*, 4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, ¶ 23, citing *Redmond v. Wade*, 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, ¶ 34, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, 78 (O'Donnell, J., concurring in part and dissenting in part), quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983)

(appellate courts "are not obligated to search the record or formulate legal arguments on behalf of the parties, because '"appellate courts do not sit as self-directed boards of legal inquiry and research, but [preside] essentially as arbiters of legal questions presented and argued by the parties before them"'"); *Coleman v. Coleman*, 9th Dist. Summit No. 27592, 2015-Ohio-2500, ¶ 9 (reviewing court will not craft plain-error argument for an appellant who fails to raise one).  Thus, because appellant did not formulate plain-error argument, we will not create one.  Instead, we simply note that we believe that the record contains ample evidence to support a finding that a change in circumstance had occurred.  As the trial court noted, the child reported that sexual abuse occurred in the Ishmaels' home.  Allegations of sexual abuse committed against the child in the legal custodians' home are an appropriate consideration when a court considers whether a change in circumstance has occurred.  *In re Russell*, 4th Dist. Washington No. 98CA525, 1999 WL 606781, *6 (Aug. 4, 1999) ("unsubstantiated allegations of sexual abuse are a factor that a court may consider when deciding whether a change in circumstances has occurred"); *accord In re N.C.*, 5th Dist. Richland No. 20 CA 0004, 2020-Ohio-6929, ¶ 32 ("disclosure of sexual abuse of the child is 'a change [that] has occurred in the circumstances of

the child' and therefore constitutes a change of circumstances"). Additionally, in March 2022 the child underwent a pediatric assessment. The assessment report stated that the child should not have contact with the Ishmaels "as it would have a negative effect on her progress made." For these reasons, we do not believe that the trial court erred, plainly or otherwise, by (1) determining that a change in circumstance had occurred, (2) terminating appellant's status as the child's legal custodian, and (3) finding that placing the child in appellee's permanent custody is in the child's best interest.

**{¶34}** Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

                                        JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the appeal be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.