[Cite as *In re K.H.*, 2024-Ohio-5292.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: K.H. | : | APPEAL NOS. C-240450 |
| | | C-240519 |
| | : | TRIAL NO. F/18/463 Z |
| | : | |
| | : | *O P I N I O N* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 6, 2024

*Treleven & Klingensmith LLC* and *John Treleven*, for Appellant Denise Ray,

*Jon R. Sinclair*, for Appellant Mother,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *J Michael Massie*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services.

**WINKLER, Judge.**

**{¶1}** In these consolidated appeals, appellant custody petitioner Denise Ray and appellant mother appeal the decision of the Hamilton County Juvenile Court denying Ray's petition for legal custody of K.H., and awarding permanent custody of K.H. to the Hamilton County Department of Job and Family Services ("HCJFS"). For the reasons that follow, we affirm.

## I.    *Factual and Procedural History*

**{¶2}** Mother gave birth to K.H. on January 11, 2022. K.H. tested positive for multiple drugs at birth, including cocaine. K.H. had an extended stay in intensive care, and upon his discharge from the hospital, neither mother nor K.H.'s alleged father could care for K.H., so HCJFS initiated a safety plan in which mother's family friend, Ray, would care for K.H. In February 2022, HCJFS moved for interim custody of K.H. and filed a complaint for permanent custody. The complaint alleged that mother had an older child who had been involuntarily committed to the permanent custody of HCJFS in 2019 based on mother's mental-health issues and drug use, and her failure to comply with case-plan services and visitation.

**{¶3}** In March 2022, HCJFS removed K.H. from Ray's home over concerns for Ray's financial and housing stability. HCJFS conducted a home study with respect to Ray, and ultimately denied Ray as an appropriate placement for K.H. Although the assessor noted Ray's genuine care and concern for K.H., the assessor found that Ray had not been forthcoming with HCJFS regarding a pending eviction action against her, as well as a history of eviction actions filed against her. The assessor also noted concerns regarding Ray's decision to quit her job as an intervention specialist during the midst of the eviction process while caring for K.H. and also caring for her then 17-year-old son.  HCJFS placed K.H. in foster care, and Ray filed a petition for custody in

the instant permanent-custody case.

**{¶4}** In September and November 2023, the permanent-custody matter proceeded to trial. At trial, the evidence showed that mother had failed to engage in the case-plan services and continued to struggle with mental-health and addiction issues. Mother had not visited K.H. since September 2022, and HCJFS could not verify whether mother had stable housing or employment. Mother requested that HCJFS place K.H. with Ray. The alleged father of K.H. had been excluded as the father via genetic testing, and mother did not identify another potential father.

**{¶5}** The ongoing HCJFS caseworker testified and noted her concerns with Ray, including her failure to disclose the eviction action. The caseworker also testified that Ray had changed K.H.'s name and pieced his ears. Ray also told the caseworker that K.H. had "stopped breathing," but that she had comforted him back to life. Ray denied seeking any medical attention after this incident, which the caseworker found concerning because K.H. had been born addicted to drugs, and had spent an extended stay in the intensive-care unit after birth. When HCJFS requested that Ray return K.H. to HCJFS's care, Ray became irate and a chaotic event ensued with Ray, mother, and others showing up at HCJFS's offices, resulting in a call to police.

**{¶6}** Ray submitted evidence of a second home study completed in May 2023 by an outside agency. The assessor in the second home study found no concerns with Ray as a potential placement for K.H. The assessor determined that Ray was employed, had a suitable residence, and had a plan for a family friend to babysit K.H.

**{¶7}** The testimony at trial showed that K.H. had been thriving in his foster placement since March 2022, and K.H. had bonded to his foster parents. The foster parents ensured that K.H. attended all of his medical and therapeutic appointments, and K.H. attended daycare three days a week. The foster parents also indicated a

willingness to adopt K.H.

**{¶8}** After trial, the magistrate entered a decision finding, by clear and convincing evidence, that K.H. could not or should not be placed with mother, and that K.H.'s best interests would be served by a grant of permanent custody to HCJFS. The magistrate recommended a denial of Ray's custody petition. Mother and Ray filed objections to the magistrate's decision. The juvenile court heard oral arguments on the objections, and in May 2024, the juvenile court overruled Ray's and mother's objections, and adopted the decision of the magistrate as the decision of the court. Ray and mother appeal.

## II.    Law and Analysis

**{¶9}** Mother and Ray each assert in a sole assignment of error that the juvenile court erred in denying Ray's custody petition and granting permanent custody of K.H. to HCJFS.

**{¶10}** R.C. 2151.414 governs the termination of parental rights. An appellate court reviews a juvenile court's decision to terminate parental rights and award permanent custody of a child to a children's services agency under R.C. 2151.414 on sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence grounds. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. In reviewing a permanent-custody decision on sufficiency-of-the-evidence grounds, an appellate court reviews the juvenile court's decision to determine whether it is supported by clear and convincing evidence, meaning "whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." (Cleaned up.) *Id.* at ¶ 8. By contrast, in reviewing a juvenile court's decision to grant permanent custody on weight-of-the-evidence grounds, "the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the

evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 10.

**{¶11}** When a children's services agency files a complaint for permanent custody, the court has various dispositional alternatives, including awarding legal custody to a person who has petitioned the court for custody, or granting permanent custody to a children's services agency. R.C. 2151.353(A)(3) and 2151.353(A)(4).

**{¶12}** R.C. 2151.353(A)(4) allows a juvenile court to award permanent custody of child to a children's services agency as an initial disposition if the court determines, by clear and convincing evidence, that (1) the child cannot be placed with the parents within a reasonable time or should not be placed with the parents under R.C. 2151.414(E), and (2) permanent custody is in the child's best interest under R.C. 2151.414(D)(1). *In re L.S.H.*, 2024-Ohio-4553, ¶ 21 (1st Dist.). By contrast, with a grant of legal custody, the parents retain residual parental rights. R.C. 2151.011(B)(21). In determining whether to grant legal custody to a petitioner, the court again is guided by the best-interest factors under R.C. 2151.414(D). *In re C & C*, 2022-Ohio-3751, ¶ 22 (1st Dist.). A juvenile court's decision regarding an award of legal custody is reviewed for an abuse of discretion. *In re S.R.*, 2017-Ohio-8412, ¶ 4 (1st Dist.).

**{¶13}** Here, the juvenile court found that K.H. cannot be placed with either parent within a reasonable time or should not be placed with either parent under R.C. 2151.414(E). Neither Ray nor mother contests the juvenile court's finding in this regard. The identity of K.H.'s father remains unknown. Mother had ongoing drug and mental-health issues, she did not maintain visits with K.H., resulting in a termination of her supervised visitation, and her parental rights had been involuntarily terminated with respect to K.H.'s older sibling. *See* R.C. 2151.414(E)(2), 2151.414(E)(4), and

2151.414(E)(11).

**{¶14}** As to the best-interest factors under R.C. 2151.414(D)(1), the juvenile court determined that K.H. was too young to express his wishes, but that he was bonded with his foster parents. *See* R.C. 2151.414(D)(1)(a) and 2151.414(D)(1)(b). K.H. has been in HCJFS custody his entire life, and he has been with his foster parents since March 2022. *See* R.C. 2151.414(D)(1)(c). The juvenile court noted that mother did not seek custody of K.H., but that she supported Ray's petition for custody. However, Ray has no relationship with K.H. because she has not seen the child since returning him to HCJFS's care in March 2022. *See* R.C. 2151.414(D)(1)(d).

**{¶15}** On appeal, Ray and mother argue that HCJFS prevented Ray from having any contact with K.H. after Ray returned K.H. to HCJFS in March 2022. HCJFS refused to allow Ray visitation with K.H. and delayed in conducting an updated home study. The second home study conducted by an outside agency approved Ray as a caregiver. Ray and mother also argue that HCJFS should not have taken K.H. from Ray's home. According to Ray, the nine eviction actions filed against her did not actually result in judgments of eviction. Ray quit her job to care for K.H., which then resulted in the March 2022 eviction action. Ray and mother also argue that granting custody to Ray would prevent the severance of mother's parental bond, so that mother could still maintain her residual parental rights, such as visitation.

**{¶16}** Despite the arguments made by mother and Ray, we determine that the juvenile court's best-interest determination was nevertheless supported by sufficient evidence and was not against the manifest weight of the evidence. The fact remains that Ray spent a few short weeks with K.H. as an infant. The evidence shows that mother's mental-health and drug-addiction issues have prevented her from being able to effectively parent. Mother has not participated in case-plan services, and she has

not seen K.H. since September 2022. Mother also had another child with whom her parental rights had been involuntarily terminated. No evidence suggests that K.H.'s best interests would be served by keeping mother's residual-parental rights intact with a grant of legal custody to Ray. The evidence also shows that K.H. is bonded to his foster parents with whom he has resided for nearly his entire life.

{¶17} Therefore, we determine that the juvenile court's decision to award permanent custody of K.H. to HCJFS was supported by sufficient evidence and was not against the manifest weight of the evidence, and the juvenile court did not abuse its discretion in denying Ray's custody petition.

{¶18} Accordingly, we overrule the assignments of error of Ray and mother.

### III. Conclusion

{¶19} We affirm the judgment of the juvenile court awarding permanent custody of K.H. to HCJFS.

Judgment affirmed.

**BERGERON, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.